IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK J. CLAY, | : | |
|     Plaintiff | : | Civil Action No. 1:06-CV-1837 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| JOEL GOOD, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is Defendant's motion for summary judgment. (Doc. No. 24.) For the reasons that follow, Defendant's motion will be denied.

**I.     BACKGROUND**

The following facts are undisputed for purposes of summary judgment. In the early morning of September 24, 2004, Plaintiff Patrick Clay was arrested for drunk driving after Defendant Joel Good, a Corporal with the York Regional Police Department, observed that Clay's driving was noticeably erratic; in the few moments before stopping Clay, Good observed him swerve, make very wide turns, and nearly miss a stop sign.

After pulling Clay over at approximately 1:17 a.m., Good approached and asked for Clay's driver's license, registration, and proof of insurance. According to Good's deposition testimony, Clay "started to mumble something, and [he] advised [that] he was very close to his residence." (Good Dep. 5; Def's Ex. C; Doc. No. 27-3, at 6.) Clay provided Good with his driver's license, but required Good to remind him of the other documents. Clay then "opened up his glove box [and] shuffl[ed] through some papers [because] he was having difficulty locating the information." (Id.) After some further fumbling, Clay recovered the other documents. (Id.) In that time, Good observed that Clay's eyes were "bloodshot and watery," his speech was slurred, and a strong odor of an alcoholic beverage emanated from Clay's breath. (Good Dep.

6.) Good asked Clay to step out of his vehicle to perform field-sobriety tests. Clay failed these tests, and Good advised him that he was under arrest for DUI, handcuffed him, and placed him in the patrol car in order to take him to the hospital for blood tests.

Clay does not dispute that he was drunk. Nor could he, as blood tests ultimately found that he had a blood-alcohol content of .252. But on September 18, 2006, Clay filed a complaint in this Court alleging that Good used excessive force in violation of the Fourth and Fourteenth Amendments when Good applied handcuffs too tightly in the process of arresting Clay that morning.

According to Clay's deposition testimony, after Good applied the handcuffs, Clay complained about them on several occasions. First, while driving to the hospital for blood tests, Clay said that the handcuffs were "a little tight" and asked whether Good could "help [him] out, loosen them up." (Clay Dep. 30:10-12; Doc. No. 32-2, at 8.) Good responded that he could not do so at the moment. Second, after exiting the police car, Clay "may have mentioned [the handcuffs] to [Good] again." (Clay Dep. 31:16-21.) Once in the hospital, Good removed the handcuffs while the nurse drew Clay's blood. According to Clay, "after the hospital, [Good] put [the handcuffs] on even tighter." (Clay Dep. 36.) Upon their arrival at the police station, Clay showed Good his hands, which were "dark red," and asked a third time if Good could do something about the handcuffs. (Id.) At the police station, while Good interviewed Clay, the handcuffs remained on. (Clay Dep. 39.)

Either the next day or soon thereafter, Clay visited his doctor to complain of numbness in his wrist. His doctor found that Clay had "no obvious injury to the wrist area, however, he [did] have decreased sensation over the thenar eminence in the palmar surface of his thumb." (Ex. I;

Doc. No. 27-3, at 29.) The doctor diagnosed Clay with "probable thenar neuritis secondary to compression from handcuffs," informed him that "it may take up to 6 weeks for a full recovery of the thumb numbness," and prescribed 400 mg of Ibuprofen every 8-12 hours as needed. (Id.) At some point thereafter, Clay visited Dr. Laurino, who recommended that Clay see a specialist. (Clay Dep. 42.) On December 15, 2004, a nerve-conduction study was performed, with normal results. (Ex. F; Doc. No. 27-3, at 21-22.) Dr. Sicuranza, to whom Clay was referred, diagnosed Clay with "[l]eft thumb pain" and "[s]ensory neuropraxic injury superficial radial nerve resolving," and found that no further treatment was warranted. (Ex. G, Doc. No. 27-3, at 24.) Several months later, after some further tests, Dr. Sicuranza diagnosed Clay with "[c]arpal instability with a secondary arthrosis," and stated that "in all likelihood, [Clay] may have had an aggravation at the time of his arrest, but he does not describe any fallen out stretched hand or forceful twisting of his wrist. He states that it was just the hand cuffs that were placed too tightly around his wrist, and would be doubtful that this is an aggravating factor for this wrist instability." (Ex. H; Doc. No. 27-3, at 26.)

On September 18, 2006, Clay brought this action against Good and three other defendants. (Doc. No. 1.) On January 11, 2007, the Court granted Defendants' motion to dismiss, except with respect to the excessive-force claim brought against Good. (Doc. No. 16.) After discovery, Good filed the instant motion for summary judgment (Doc. No. 24), which is now fully briefed (Doc. No. 25-27, 32-34).

3

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Public Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, it essentially becomes "'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. DISCUSSION

The issue before the Court is whether the force used by Good in effecting Clay's arrest was objectively reasonable under the circumstances.  Graham v. Conner, 490 U.S. 386 (1989) (establishing "objective reasonableness" standard for excessive-force claims).  The Court's inquiry into the objective reasonableness of the use of force is guided by several factors, including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight, [as well as] the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006) (internal citations and quotation marks omitted).

Applying these factors to this case suggests that minimal force should have been necessary to execute Clay's arrest.  Although drunk driving is a serious crime, there is no reason to believe that after the vehicle was stopped Clay posed any threat, immediate or otherwise, to

the safety of Good or others. Additionally, Good has proffered no evidence indicating that Clay resisted arrest, that Clay was armed, or that any other circumstances would have merited the sort of snap judgments that officers are often called upon to make. Finally, though Good applied the handcuffs to Clay's wrists in the course of effecting Clay's arrest and then again after completing the tests at the hospital, the presently undisputed facts suggest that Good did not respond to Clay's entreaties *after* Clay was arrested. Based on these factors, the Court finds that, under the circumstances, a reasonable juror could conclude that Good's actions were not objectively reasonable if he applied the handcuffs in an excessively tight manner in order to effect Clay's arrest.

The leading case in this circuit involving the use of "excessively tight handcuffs" is Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004). In Kopec, the Third Circuit held that an officer could not claim qualified immunity where, after arresting the plaintiff for disorderly conduct, the officer affixed handcuffs on plaintiff's wrists so tightly that he "began to faint from the pain caused by the handcuffs and then fell to the ground," and where the officer, for several minutes, failed to remove the handcuffs or otherwise respond to Kopec's repeated requests for the handcuffs to be loosened. Id. at 774. Kopec also claimed that the handcuffs caused him "severe pain" and "that he suffered permanent nerve damage to his right wrist." Id. In denying the officer's summary-judgment motion, the Third Circuit cautioned that its opinion "should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims," and emphasized the "rather benign circumstances that hardly justified [the officer's] failure to respond more promptly to Kopec's entreaties, at least to the extent to ascertain if the handcuffs were too tight." Id.

Based on Kopec, after drawing all reasonable inferences in Clay's favor, the Court finds that a reasonable juror could conclude that Good used excessive force in applying the handcuffs. At least for the purposes of summary judgment, Good concedes that Clay complained on several occasions that the handcuffs were tight and asked Good to "help [him] out, loosen them up." It is further undisputed that Clay showed Good that his hands were dark red, but Good did not ascertain whether the handcuffs were too tight. Finally, from the record, it is not in serious dispute that Clay suffered physical injury from the handcuffs, even if the injury is less severe than that in Kopec.

This result is consistent with those of other courts within this circuit. For example, in Hayhurst v. Upper Makefield Township, No. 06-3114, 2007 WL 1795682 (E.D. Pa. June 20, 2007), the court denied summary judgment where, after an officer applied handcuffs on the plaintiff's wrist, the plaintiff "complained that the handcuffs were too tight." Id. at *4. After the officer removed the handcuffs, the plaintiff's wrists were "reddened" for six to eight weeks, and the handcuffs apparently "cut her wrists and drew blood." Id. However, the plaintiff did not seek medical treatment for her injuries and suffered no permanent injuries from the handcuffs. Id. Based on those facts, the court found that "a reasonable jury could find [the officer's] handcuffing of [the plaintiff] to constitute excessive force." Id. at *6.

Similarly, in Tate v. West Norriton Township, No. 06-4068, 2008 WL 862523 (E.D. Pa. Mar. 31, 2008), the court denied summary judgment where the plaintiff, on at least three occasions complained that the handcuffs were too tight, though he never complained of any pain. Id. at *7. When the officer removed the handcuffs, the plaintiff "cried and fell to the ground" and his wrist became swollen and discolored. Id. He was then "rushed to the hospital where he

was diagnosed with a contusion, and his wrist was fitted with a splint which he wore for two months." Id. The court found these facts were sufficient to "permit a jury to find objective unreasonableness on the part of [the officer] in failing to promptly relieve the excessively tight handcuffs on [the plaintiff]." Id.

By contrast, courts have granted summary judgment where plaintiffs never complained of any discomfort. Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005); accord Donahue v. Beers, No. 02-224J, 2006 WL 2788221, at *4 (W.D. Pa. Sept. 26, 2006).

Accordingly, applying the principles set forth in Kopec, the Court finds that a reasonable juror could conclude—based on the undisputed facts that Clay made repeated complaints and manifestly suffered physical injuries, and after drawing all reasonable inferences in his favor—that the handcuffs were excessively tight. Thus, in light of the relatively untrying circumstances surrounding the execution of Clay's arrest, the jury could conclude that Good used excessive force in violation of the Fourth Amendment.

Good argues that Scott v. Harris, 127 S. Ct. 1769 (2007), compels a different conclusion in this case. In particular, Good argues that:

> Prior to the U.S. Supreme Court's recent decision in Scott v. Harris, supra., we would have assumed that the mere fact that Clay gave some vague testimony in his deposition to the effect that he had reported to Corporal Good that the handcuffs were too tight, and further testified that Corporal Good took no remedial action would be enough to send this case to the jury. *But no longer is this Court required to ignore the factual picture taken as a whole*. If Plaintiff complained about the handcuffs being too tight before he got to the hospital, a matter that contradicts the information recorded in his doctor's notes, recorded on September 27, 2004, three (3) days after his arrest, this Court should also consider that at the hospital, the handcuffs were removed, and he made no request for medical attention either at the hospital or afterward. If the handcuffs were bothering Mr. Clay on his ride back to the station, and he complained

> about it, either during the ride or immediately after he arrived at the station, the undisputed record shows that the handcuffs were removed at the station and that Mr. Clay asked for nothing more to be done, either by Corporal Good or by Officer Zinn on the ride back to his home.

(Def's Br. in Supp. 6-7) (emphasis added). In other words, Good argues that, given the weight of the record, Clay's deposition testimony is insufficient to create a genuine issue of material fact.

As an initial matter, the Court does not entirely agree with Good that the doctor's notes contradict Clay's testimony. While it is true that the doctor's notes indicate that Clay commented that "he would not give the police the satisfaction of complaining and therefore said nothing," (Ex. I; Doc. No. 27-3), the notes provide no context for the comment. It is arguable that Clay's comment related to a decision not to make a *formal* complaint, or that he did not express the full extent of his pain to Good or others. The Court need not resolve these possibilities, as that is a function of the jury.

But, even if the doctor's notes directly contradicted Clay's deposition testimony, that does not mean that no genuine issue of material fact exists. Despite Good's arguments to the contrary, Scott did not modify the summary judgment standard, it merely amplified the requirement that in order to grant summary judgment there must "be no *genuine* issue of *material* fact." Scott, 127 S. Ct. at 1776; see Blaylock v. City of Philadelphia, 504 F.3d 405, 412-14 (3d Cir. 2007) (discussing Scott in detail). The Court held that "[w]hen opposing parties tell two different stories, *one of which is blatantly contradicted by the record, so that no reasonable jury could believe it*, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 127 S. Ct. at 1776 (emphasis added).

Because a videotape in that case "so utterly discredited" the plaintiff's "version of events," the Court found that no genuine issue of material fact existed. Id.

Here, even if Clay and the notes "tell two different stories," the record does not "blatantly contradict" or "utterly discredit" Clay's deposition testimony that he complained on several occasions to Good.  Thus Scott does not affect the outcome of this motion.  By way of illustration, if Good had proffered a videotape, or even an audiotape, of the arrest where Clay made no mention of the handcuffs, that could be a different situation.  See, e.g., Gilles, 427 F.3d at 208 ("As the District Court noted on viewing the videotape of the arrest, Gilles demonstrated no expression or signs of discomfort at the time he was handcuffed.").  But on the record in this case, summary judgment cannot be granted because genuine issues of material fact exist.  Accordingly, Good's motion will be denied.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK J. CLAY, | : | |
|     Plaintiff | : | Civil Action No. 1:06-CV-1837 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| JOEL GOOD, | : | |
|     Defendant | : | |

## ORDER

**AND NOW**, on this 1st day of July, 2008, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion for summary judgment (Doc. No. 24) is **DENIED**. **IT IS FURTHER ORDERED THAT** a telephone conference be held on September 4, 2008, at 10:00 a.m. to discuss further deadlines in the case.

 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania